# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 14-653

AVOYELLES PAYDAY LOANS, LLC

VERSUS

TRISTA M. GRIFFIN

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
BUNKIE CITY COURT
PARISH OF AVOYELLES, DOCKET NO. 2013-24
HONORABLE JAMES H. MIXON, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.

**AFFIRMED.**

**Derrick M. Whittington**
**Whittington Law Firm**
**339 Moreau Street, Suite A**
**Post Office Box 127**
**Marksville, Louisiana 71351**
**(318) 253-5852**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      Avoyelles Payday Loans, LLC

**Trista M. Griffin**
**602 South Holly Street**
**Bunkie, Louisiana 71322**
**(318) 264-4598**
**DEFENDANT/APPELLEE:**
     **In Proper Person**

**GENOVESE, Judge.**

Plaintiff, Avoyelles Payday Loans, LLC (Payday Loans), appeals the trial court's judgment in favor of Defendant, Trista M. Griffin, dismissing its suit on a promissory note. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On May 20, 2010, Ms. Griffin executed a promissory note with Payday Loans in the amount of $275.00, payable in one installment of $275.00 on June 7, 2010. Ms. Griffin also issued a check to Payday Loans for $275.00 dated June 7, 2010. However, the check was drafted on a closed account; thus, there were insufficient funds to pay the check. Thereafter, Payday Loans turned the matter over to the Avoyelles Parish District Attorney's Worthless Check Division. The district attorney's office contacted Ms. Griffin about the worthless check. Ms. Griffin then made a payment of $386.08 to the district attorney's office on August 23, 2010. Subsequent thereto, the district attorney's office mailed $305.54 to Payday Loans, the receipt of which was acknowledged by the signature of Francis Keller, the owner of Payday Loans, on August 31, 2010.[1]

On May 9, 2013, Payday Loans filed a Petition on Promissory Note seeking the amounts allegedly due on the promissory note. Ms. Griffin answered the lawsuit denying Payday Loans' allegations.

The parties participated in a pretrial conference on September 18, 2013. At the pretrial conference, Mr. Keller advised the trial court that Payday Loans had not received the $305.54 payment from the district attorney's office until April 2013. Based upon this information, Ms. Griffin agreed to pay Payday Loans an additional $150.00 to settle the matter.

---

[1]The district attorney's office retained $80.54 for a collection fee.

Before making a payment to Payday Loans, Ms. Griffin contacted the district attorney's office and questioned why nearly three years had elapsed before it sent the payment to Payday Loans. At that time, Ms. Griffin was given a copy of a letter from the district attorney's office to Payday Loans forwarding the $305.54 payment to Payday Loans on August 23, 2010. The letter contained the signature of Mr. Keller dated August 31, 2010, acknowledging Payday Loans' receipt of $305.54. Thereafter, Ms. Griffin moved the trial court to have the matter set for trial on the merits.

Following trial on November 22, 2013, the trial court found in favor of Ms. Griffin and dismissed the claims of Payday Loans. Payday Loans appeals.

## ASSIGNMENT OF ERROR

In its sole assignment of error, Payday Loans asserts that the trial court erred in failing to award it damages and attorney fees against Ms. Griffin pursuant to the promissory note.

## LAW AND DISCUSSION

Following trial on the merits, the trial court issued an opinion wherein it set forth the facts that were proven at trial and its reasons for ruling, stating as follows:

> In every criminal case, the District Attorney represents the State of Louisiana. But, in every case there is a victim of the crime. In a matter involving a check written on a closed account, the victim is the person or entity which received the check. In the matter before the Court, Avoyelles Payday Loans, [LLC,] was the victim. When this matter was turned over to the District Attorney, the District Attorney, became, for all intents and purposes, the legal representative of the victim. When the District Attorney informed Ms. Griffin that she had to pay the sum of $ 386.08, she paid it. Of the sum[,] $ 80.54 went to the District Attorney as collection fee. The sum of $ 305.54 went to the Plaintiff which apparently covered the amount of the check ($275.00), the fee charged by the bank ($ 25.00)[,] and an additional amount of $ 5.54 which is either interest or the cost of sending a certified letter. At any rate[,] the Court is of the opinion that Ms. Griffin should be able to rely on the payment that she made to clear up any debt she owed to the Plaintiff. During the trial, Mr. Francis Keller, President of Avoyelles Payday Loans, [LLC] was

asked by his attorney what the balance was that was owed by Ms. Griffin after the payment of $ 305.54. He was unable to come up with a balance. If there was a balance owed, why wait nearly 3 years to attempt collection? Ms. Griffin received the sum of $ 225.00 on May 20, 2010[,] for which she paid the sum of $ 386.08 in August of 2010. The Court is sure that Ms. Griffin would have paid whatever sum requested by the District Attorney for restitution to the Plaintiff. The Court finds in favor of the Defendant[] and against the Plaintiff at Plaintiff's cost.

Payday Loans argues in its brief to this court that "[t]he [d]istrict [a]ttorney's involvement in this case was only to resolve the issue of the worthless check, not collecting the balance on an open account." Notably, however, the check that was returned for insufficient funds was for payment of the loan in full; it was not an installment payment. There were no remaining payments to be made by Ms. Griffin to satisfy her repayment obligations. Undisputedly, the district attorney was successful in collecting the amount of the check, and payment of $305.54 was made to Payday Loans in August 2010.

Ms. Griffin testified at trial that her willingness to settle the matter for the amount agreed upon at pretrial conference was based on the representation made by Mr. Keller that Payday Loans had not received payment until April 2013. At trial, the trial judge questioned Mr. Keller, specifically addressing the discrepancy between the allegation in Payday Loans' petition that a payment was made by Ms. Griffin on August 23, 2010, and Mr. Keller's representation at the pretrial conference when, according to the trial court, he stated "in no uncertain terms" that the payment was not received until April 2013. Candidly, Mr. Keller testified that he did not recall when he received the payment, nor was he able to testify as to what the balance would have been at that time. Thereafter, when Mr. Keller was presented with correspondence containing his signature acknowledging receipt of payment from the district attorney dated August 31, 2010, he conceded that fact.

3

Despite not being represented by counsel at trial, Ms. Griffin testified as to what transpired. Ms. Griffin testified that she issued two checks (in the amounts of $305.84 and $80.54) to the district attorney's office in 2010 and "was told that once [she] paid this everything was clear." When she later learned that Payday Loans contended she still owed them money, she returned to the district attorney's office to see "what was actually going on." Ms. Griffin testified that at her request, on April 24, 2013, the district attorney sent her a letter documenting the amounts she had paid in 2010. She explained that she then faxed a copy of the letter to Mr. Keller.[2] According to her testimony, Ms. Griffin met with the district attorney's office on two occasions and was advised that she did not owe Payday Loans anything more.

Based upon the evidence, it was clearly established that Ms. Griffin issued a worthless check for $275.00 for which she remitted payment totaling $386.08 on August 23, 2010. The district attorney then forwarded $305.54 to Payday Loans, which was acknowledged by Mr. Keller on August 31, 2010. Ms. Griffin was never told that she still owed money to Payday Loans, and she was not contacted by them again for years. Ms. Griffin later agreed, at the pretrial conference, to pay an additional $150.00 to Payday Loans based upon Mr. Keller's erroneous representation that Payday Loans was not paid until 2013. The opinion of the trial court accurately sets forth the facts and evidence, and we find no manifest error[3] in the trial court's judgment in favor of Ms. Griffin.

---

[2]Conceivably, it was the date of this fax that Mr. Keller was referencing, erroneously, at the pretrial conference as the date payment was received.

[3]Appellate courts are to apply the manifest error standard of review to the trial court's factual determinations. *See Granger v. Calcasieu Parish Police Jury*, 14-111 (La.App. 3 Cir. 6/18/14), 140 So.3d 1283.

As inferred by the trial court, we likewise find that when Payday Loans opted to use the "strong arm" of the district attorney to assist it in collecting the amount it claimed was owed by Ms. Griffin, and then accepted the amount collected by the district attorney's office from Ms. Griffin, Payday Loans' claim against Ms. Griffin was fully satisfied and extinguished. To rule otherwise would allow double-dipping and an excessive collection.

## DECREE

For the foregoing reasons, the judgment of the trial court in favor of Trista M. Griffin, dismissing the claims of Avoyelles Payday Loans, LLC, is affirmed. Costs of this appeal are assessed to Avoyelles Payday Loans, LLC.

**AFFIRMED.**